Valhalla Sales Organization, Inc. v. Commissioner.
Valhalla Sales Org., Inc. v. Commissioner
Docket No. 8960.
United States Tax Court
1947 Tax Ct. Memo LEXIS 34; 6 T.C.M. (CCH) 1213; T.C.M. (RIA) 47309; November 18, 1947
*34 Salaries of $4,550 paid by petitioner for 1942 to its president and its secretary-treasurer constituted reasonable compensation for services actually rendered by these officers in that year. F. A. Pike, C.P.A., 6331 Hollywood Blvd., Hollywood 28, Calif., for the petitioner. Byron M. Coon, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion. LEECH, Judge: Respondent has determined deficiencies in petitioner's Federal income and declared value excess-profits taxes for the year 1942 in the respective amounts of $1,008.33 and $516.70. These deficiencies arise from one adjustment made by respondent in net income reported by petitioner upon its return for the taxable year. Respondent eliminated $4,550 of a total deduction of $9,100, representing salaries of $4,500 paid by it in that year to its president and its secretary-treasurer. The amount paid by petitioner and claimed as a deduction was determined by respondent to be excessive to that extent. Findings of Fact The petitioner is a California corporation which, with its three affiliates named below, filed its Federal income tax returns in the sixth collection district of California. Petitioner *35 was organized on March 23, 1940, at which time officers were elected as follows: C. C. Fitz-Patrick
President
Charles A. Nelson
Vice-President
Ada H. Fitz-Patrick
Secretary-Treasurer It was authorized, by action of its directors, to issue 10 shares of stock, no-par value, six shares to Ada H. Fitz-Patrick and four shares to C. C. Fitz-Patrick, but no certificates therefor were ever issued. Petitioner was organized to act as sales agent for cemetery lots in Valhalla Memorial Park and Valhalla Mausoleum Park. It was affiliated with three other corporations, the Osborne Fitz-Patrick Finance Company, called O.F.F. Company, Valhalla Memorial Park, and Valhalla Mausoleum Park. O.F.F. Company was the original corporation organized which bought and held title to the real property. It is the only one of the four companies in which stock was issued. This company was organized by C. C. Fitz-Patrick and one Osborne, they owning the issued stock. Subsequently, as a result of litigation between Fitz-Patrick and Osborne, the former acquired the stock interest of Osborne in that company. The petitioner and its affiliated companies had their own office building in Burbank, *36 California. There were altogether 130 acres in the cemetery: 65 acres in Valhalla Memorial Park, 52 in Mausoleum Park, and 13 in what was called Valhalla Annex. At the time of the original acquisition of the properties by O.F.F. Company in 1923, C. C. Fitz-Patrick and Ada H. Fitz-Patrick were husband and wife. In 1934 the Fitz-Patricks were divorced and Mrs. Fitz-Patrick, in a property settlement at that time, received 60 per cent and C. C. Fitz-Patrick, 40 per cent of the O.F.F. Company. The petitioner herein, Valhalla Sales Organization, Inc., was organized some years subsequent to the divorce mentioned. Ada H. Fitz-Patrick has for many years been actively engaged with C. C. Fitz-Patrick in the management of this cemetery business and her activity therein has continued after the divorce. Neither she nor C. C. Fitz-Patrick is engaged in any other occupation. C. C. Fitz-Patrick, since the organization of petitioner, has served as its president, directing its operations, and supervising its personnel. During the year 1942 the petitioner employed no sales force and C. C. Fitz-Patrick, in addition to his executive duties, made sales of cemetery lots and graves and acted as overseer *37 in supervising the activities of the employees in maintenance and improvement of the properties. Ada H. Fitz-Patrick was in charge of the finances of petitioner, signed the checks, paid and verified all bills, and, herself, handled all correspondence for the corporation, which was in considerable volume. The year 1942 was a bad year for petitioner. The United States Army had appropriated the use of 40 acres of the 52 acres of Valhalla Mausoleum Park for defense purposes, installing traps and dugouts, and occupied it until December 1946. The Fitz-Patricks had, in 1941, arranged for financing for a very considerable development of the properties and installing of a sales force for an intensive selling campaign, but this plan had to be abandoned and their efforts directed to maintaining the properties and keeping the corporation going under adverse conditions. For that year petitioner reported a gross income of $19,077.70 on gross sales of $27,479.74. Its deductions for expenses in carrying on its business amounted to $18,463.30. It reported a net income of $614.40. Included in petitioner's expense deductions of $18,463.30 for 1942 were salaries of $4,550 for each of its officers. *38 C. C. Fitz-Patrick and Ada H. Fitz-Patrick. These salaries were fixed by C. C. Fitz-Patrick, as president, under authority of a resolution adopted by petitioner's directors on April 2, 1940, upon its organization, which provided that its president and secretary-treasurer should each receive a salary of $350 a month and that such payments should not be increased for two years, after which the salaries might be increased from time to time, but not to exceed the amount of $750 per month unless by motion of the board of directors. In determining the deficiencies herein respondent determined that payments by petitioner for salaries to the Fitz-Patricks were excessive to the extent of $4,550, as such amount was reasonable compensation for the total services rendered by both. The salaries of $4,550, paid by petitioner in the taxable year 1942 to its president and its secretary-treasurer, represented reasonable compensation for services rendered by them in that year. Opinion This proceeding presents a purely factual question, namely, the value to petitioner of the services rendered by the two Fitz-Patricks. Respondent contends that these services did not justify a payment in excess *39 of $4,550 to the two jointly and that the payments of salaries in this amount to each represented twice as much as petitioner was justified in paying. With this condition we can not agree in view of the record. These two individuals were the executive officers of petitioner and had long directed its affairs and although petitioner realized little net income in this year, it was brought through what appears to be a very difficult period with no losses. Respondent's determination is that a payment of less than $44 a week to each of these individuals was reasonable compensation and anything in excess of this amount was unreasonable. Such a payment would hardly have been a living wage and no more than would be necessary to be paid to secure the services of unskilled laborers. We do not think that the salary of $4,550, paid to each of these individuals and which was authorized by resolution of the directors two years prior to this time, was excessive and we have so found. Decision will be entered for the petitioner.